UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re: Chapter 7

CARL CERON, Case No. 04-25876-ess

Debtor.

-----------------------------------------------------------x

FIRST SERVICES GROUP, INC.,

Plaintiff, Adv. Pro. No. 08-1277-ess

- against -

RICHARD E. O'CONNELL,
as Chapter 7 Trustee of the Estate of Carl Ceron,

Defendant.
-----------------------------------------------------------x

**MEMORANDUM DECISION ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

*Appearances:*

C. Nathan Dee
Cullen & Dykman LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
*Attorneys for First Services Group, Inc.*

Samuel E. Kramer
225 Broadway
Suite 3300
New York, NY 10007
*Attorneys for Richard E. O'Connell as Chapter 7 Trustee*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding was commenced by the filing of a complaint (the "Complaint") by First Services Group, Inc. ("FSG"), a creditor of Carl Ceron, against Richard E. O'Connell, the Chapter 7 Trustee (the "Trustee") of the estate of Carl Ceron (the "Debtor"), to recover the surplus proceeds (the "Funds") that remain from the foreclosure sale of real property located at 676 Georgia Avenue, Brooklyn, New York (the "Property"), on which FSG had a junior lien.

Before the Court is FSG's motion for summary judgment on all of its claims for relief, which seek a determination that FSG holds a valid secured lien on the Funds, an award of that amount plus interest, penalties, and attorneys fees, an accounting of the Funds held by the Trustee, and the turnover of the Funds to FSG. Also before the Court is the Trustee's cross-motion for summary judgment, in which the Trustee opposes FSG's summary judgment motion and seeks the dismissal of the Complaint for failure to state a cause of action, and also seeks to recover the reasonable and necessary costs and expenses of preserving or disposing of FSG's property pursuant to 11 U.S.C. § 506(c).

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(F). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H). The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Federal Rule of Bankruptcy Procedure 7052.

## Procedural History

On November 11, 2008, FSG filed the Complaint against the Trustee. Docket No. 1. On December 12, 2008, the Trustee filed an Answer and Counterclaim, in which he admits many of FSG's factual allegations and asserts certain affirmative defenses and counterclaims. Docket No. 4.

On March 2, 2009, FSG filed a motion for summary judgment against the Trustee under Federal Rule of Civil Procedure 56 (the "Summary Judgment Motion") together with a Memorandum of Law in Support of Summary Judgment Motion (the "FSG Mem."). Docket Nos. 9, 10. The Summary Judgment Motion is supported by the affidavit of FSG's president, Jon Krigsman. Docket No. 12. FSG also filed a Statement of Material Facts Pursuant to Rule 7056-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "FSG Statement of Material Facts"), in which it states that there are no issues of material fact to be tried. Docket No. 11.

On April 27, 2009, the Trustee filed a cross-motion under Rule 56 for summary judgment against FSG (the "Cross-Motion"). Docket No. 17. The Cross-Motion is supported by the declarations of Samuel Kramer, the attorney for the Trustee, and Mr. O'Connell, the Trustee (the "O'Connell Decl."). *Id*. On April 30, 2009, the Trustee filed a Memorandum of Law in Support of the Trustee's Cross-Motion (the "Trustee Mem."). Docket No. 19. The Trustee also filed a response to the FSG Statement of Material Facts admitting many of FSG's allegations and its own Statement of Material Facts pursuant to Local Rule 7056-1 (the "Trustee Statement of Material Facts"), in which he, like FSG, states that there are no issues of material fact to be tried. Docket No. 17.

On June 2, 2009, FSG filed a Reply in Connection with its Summary Judgment Motion

and Response to the Trustee's Cross-Motion (the "FSG Reply"). Docket No. 22. FSG also filed a response to the Trustee Statement of Material Facts admitting many of the Trustee's allegations. Docket No. 21.

On June 15, 2009, the Trustee filed a Reply Memorandum of Law in Support of the Trustee's Cross-Motion (the "Trustee Reply"). Docket No. 23. On July 30, 2009, FSG filed the declarations of Ruth O'Connor (the "O'Connor Decl.") of Cullen and Dykman LLP, attorneys for FSG, and Mr. Krigsman (the "Krigsman Decl."). Docket No. 29. And on August 8, 2009, the Trustee filed a Supplemental Memorandum of Law in support of the Cross-Motion (the "Trustee Supp. Mem."). Docket No. 29. On August 24, 2009, the Trustee filed a further declaration of Mr. Kramer (the "Kramer Reply Decl.") and FSG filed the declaration of C. Nathan Dee, also of Cullen and Dykman LLP (the "Dee Decl."). Docket Nos. 31, 32.

Hearings on the Summary Judgment Motion and Cross-Motion were held on June 29, 2009, and August 6, 2009, at which counsel for FSG and counsel for the Trustee appeared and were heard. The matters were submitted for decision on August 26, 2009. After consideration of the submissions, the arguments of counsel, and the record before the Court, for the reasons set forth below, the Summary Judgment Motion is granted in part and denied in part and the Cross-Motion is granted in part and denied in part.

## **Background**

On October 22, 2004, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Olympia Mortgage Corporation ("Olympia"), commenced a foreclosure action against the Debtor and other defendants in the New York Supreme Court, Kings County, Index No. 34829/04 (the "State Court Action"). FSG Statement of Material Facts ¶ 4. Olympia is

named as both plaintiff and defendant in the State Court Action because it holds both first and second liens in the Property. FSG Statement of Material Facts ¶ 5.

On November 10, 2004, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code. Case No. 04-28576 (*In re Carl Ceron*), Docket No. 1. On November 20, 2004, MERS, as nominee for Olympia, filed a motion to lift the stay with respect to the Property. Case No. 04-28576, Docket No. 5. On January 26, 2005, the Trustee filed a response stating that he did not oppose the motion to lift the stay. Case No. 04-28576, Docket No. 6. On February 2, 2005, the Court entered an order granting the motion to lift the stay which provided, among other things, that the Trustee retained his interest in any surplus monies produced by a sale of the Property. Case No. 04-28576, Docket No. 12.

On October 20, 2005, a Judgment of Foreclosure and Sale was entered in the State Court Action allowing the Property to be sold and the first mortgage to be paid from the sale proceeds. Trustee Statement of Material Facts ¶ 8; O’Connell Decl. Exh. D (State Court Judgment of Foreclosure and Sale). On December 1, 2005, a state court referee conducted the sale of the Property in the State Court Action. FSG Statement of Material Facts ¶ 13.

On January 24, 2006, the referee issued a report of sale and surplus money affidavit stating that the Property had been sold to a third party and after satisfaction of MERS’s senior lien on the property, there remained $84,912.90 in surplus proceeds. FSG Statement of Material Facts ¶¶ 14, 15. The referee did not file a motion to confirm the sale of the Property. FSG Statement of Material Facts ¶ 16.

On February 23, 2006, the Debtor entered into an agreement with Wilfly Capital Management LP (“Wilfly”) transferring to Wilfly his interest in the Funds. O’Connell Decl.

¶ 25. On April 18, 2006, Wilfly filed a notice of claim to the Funds in the State Court Action. O'Connell Decl. ¶ 26. On April 25, 2006, the Trustee also filed a notice of claim to the Funds in the State Court Action. FSG Statement of Material Facts ¶ 17. On July 2, 2007, the Trustee filed a motion seeking, among other things, the turnover of the Funds to the Trustee. FSG Statement of Material Facts ¶ 18. In his motion, the Trustee did not seek to confirm the sale of the Property. FSG Statement of Material Facts ¶ 20. On July 23, 2007, Olympia assigned to FSG all of its rights to the Funds under the mortgage documents. FSG Statement of Material Facts ¶ 21. On October 24, 2007, FSG filed a notice of claim to the Funds in the State Court Action. FSG Statement of Material Facts ¶ 23.

On October 30, 2007, the state court entered an order directing that the Funds be distributed to the Trustee. FSG Statement of Material Facts ¶ 25. On April 25, 2008, the Trustee received $92,234.71 from the New York City Department of Finance. Trustee Statement of Material Facts ¶ 16. On July 16, 2008, FSG filed a secured proof of claim in the Debtor's bankruptcy case in the amount of $62,833.72, plus interest, penalties, and attorneys fees. Case No. 04-28576, Claim No. 2. On September 25, 2008, FSG amended the amount of its proof of claim to $86,497.88, plus interest at a rate of 12.5 percent, attorneys fees, costs, and expenses. Case No. 04-28576, Claim No. 4. FSG states that as of March 2, 2009, the amount owed on its proof of claim is approximately $96,074.99, plus legal fees and related costs. FSG Statement of Material Facts ¶ 29.

On July 15, 2009, the Court entered a stipulation and order authorizing the Trustee to make an interim distribution of $69,035.01, to FSG. Docket No. 27. Accordingly, the parties dispute the proper distribution of the remaining balance of some $23,199.70 of the Funds.

The Trustee does not dispute that FSG holds a valid secured claim on the Funds. Trustee Reply at 2. Instead, the Trustee argues that it would be inequitable for FSG's claim for interest at a rate of 12.5 percent to consume the balance of the Funds merely because Olympia did not exercise its right to be paid on its claim directly by the referee under Section 1351.3 of the New York Real Property Actions and Proceedings Law ("RPAPL"). *Id.* The Trustee also calls on this Court to exercise its general equitable powers and to consider the equities of the case under Bankruptcy Code Sections 105(a) and 552(b). Trustee Mem. at 9, 13. Finally, the Trustee argues that he may recover his reasonable and necessary costs and expenses, including attorneys fees, from the Funds under Bankruptcy Code Section 506(c) because FSG benefitted from his efforts to recover the Funds in the State Court Action. Trustee Reply at 7-10.

**Discussion**

*The Standard for Summary Judgment*

Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Bankruptcy Rule 7056, provides that summary judgment is appropriate when "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. And an issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion." *Smith v. Goord*, 2008 WL 902184, at *4 (S.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4). If this burden is met, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (quotation omitted). "There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor." *Cadle Co. v. Newhouse*, 2002 WL 1888716, at *4 (S.D.N.Y. Aug. 16, 2002) (citing *Anderson*, 477 U.S. at 249). *See Anderson*, 477 U.S. at 250 (finding that summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

In reviewing a motion for summary judgment, a court must "construe the evidence in the light most favorable to the [nonmoving party], drawing all inferences and resolving all ambiguities in [that party's] favor." *Mathirampuzha v. Potter*, 548 F.3d 70, 72-73 (2d Cir. 2008) (citations and quotations omitted).

*<u>RPAPL Section 1351.3</u>*

RPAPL Section 1351.3 provides:

> If it appears to the satisfaction of the court that there exists no more than one other mortgage on the premis[e]s which is then due and which is subordinate only to the plaintiff's mortgage but is entitled to priority over all other liens and encumbrances . . . , upon motion of the holder of such mortgage made without valid objection of any other party, the final judgment may direct payment of the subordinate mortgage debt from the proceeds in accordance with subdivision 3 of

section 1354.

RPAPL § 1351.3.

In *Liberty View Limited Partnership v. 90 West Associates*, 150 Misc. 2d 913, 571 N.Y.S.2d 376 (Sup. Ct. N.Y. Co. 1991), the court referenced the legislative history of RPAPL Section 1351.3 as follows:

> The Bill Jacket (L 1982, ch 364) contains a letter dated June 9, 1982, from the Assembly cosponsor of the legislation. The letter to the Governor's counsel states that the bill:
>
> > "authorizes the payment of surplus monies from a mortgage foreclosure action, directly to a subordinate mortgagee who is entitled to priority over other liens and encumbrances, without the necessity of a surplus monies proceeding.
> >
> > This simplified procedure would only require the holder of the subordinate mortgage and priority lien to make a motion to the Court for payment. The final judgment may then provide for direct payment of the subordinate mortgage indebtedness, if no valid objection is made by any party. The Referee in the foreclosure action may then pay the monies due the subordinate mortgagee directly from the proceeds of the public sale, pursuant to the Court judgment. This procedure would streamline the otherwise cumbersome surplus monies proceedings which must now be conducted postforeclosure, in those cases where the subordinate mortgagee is the priority lien holder."

*Liberty View*, 150 Misc. 2d at 914-15, 571 N.Y.S.2d at 377-78. The court concluded that "this history makes clear that the [New York] Legislature intended that the second mortgage could be paid without the delay and expense involved in surplus money proceedings." *Liberty View*, 150 Misc. 2d at 915, 571 N.Y.S.2d at 378.

*<u>Bankruptcy Code Section 506(c)</u>*

Bankruptcy Code Section 506(c) provides:

The trustee may recover from property securing an allowed secured claim the

> reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

11 U.S.C. § 506(c).

"[T]he underlying purpose of 11 U.S.C. § 506(c) is that the secured creditor should pay for the benefit it received." *Marc Stuart Goldberg, P.C. v. City of New York* (*In re Navis Realty, Inc.*), 193 B.R. 998, 1006 (Bankr. E.D.N.Y. 1996).

To have a valid claim under Section 506(c) and absent implied or express consent by the secured creditor, a trustee must demonstrate that the expenses were necessary, the amounts expended were reasonable, and the expenses directly benefitted the secured creditor. *In re McLean Indus., Inc*., 84 B.R. 340, 350 (Bankr. S.D.N.Y. 1988); *PSI, Inc. of Mo. v. Aguillard (In re Senior-G & A Operating Co.*), 957 F.2d 1290, 1299-1300 (5th Cir. 1992); *In re Guterl Special Steel Corp*., 316 B.R. 843, 854 (Bankr. W.D. Pa. 2004). The trustee bears the burden of showing that Section 506(c) applies. *Gen. Elec. Credit Corp. v. Levin & Weintraub* (*In re Flagstaff Foodservice Corp*.), 739 F.2d 73, 77 (2d Cir. 1984) ("*Flagstaff I*").

Generally, expenses are "necessary" under Section 506(c) only if there is equity in the collateral for the benefit of the estate, and unnecessary if there is no equity. *See, e.g., In re Crutcher Concrete Const*., 218 B.R. 376, 380 (Bankr. W.D. Ky. 1998) (expenses associated with trustee's disposition of automobiles were "necessary" where trustee reasonably anticipated at time of sale that vehicles had potential equity for the estate); *Noland v. Williamson* (*In re Williamson*), 94 B.R. 958, 963 (Bankr. S.D. Ohio 1988) (trustee's sale of estate property was "unnecessary" where it was evident before the sale that there was no equity for the estate).

To support a surcharge against a secured creditor, the trustee must also show that the

expenditures were made "primarily for the benefit of the creditor and that the creditor directly [benefitted] from the expenditure." *Gen. Elec. Credit Corp. v. Peltz (In re Flagstaff Foodservice Corp.*) ("*Flagstaff II*"), 762 F.2d 10, 12 (2d Cir. 1985) (denying Section 506(c) claim because payroll taxes incurred during debtor's attempted reorganization were not for the primary benefit of secured creditor). *See In re Sports Info. Data Base, Inc.*, 64 B.R. 824, 827 (Bankr. S.D.N.Y. 1986) (payment of rent did not give rise to a Section 506(c) claim where primary benefit was to estate, not to secured creditor); *In re Senior-G & A Operating Co.*, 957 F.2d at 1300 (expenses to rework oil well benefitted secured creditor that received percentage of production from the well). A trustee "does not meet this burden of proof by suggesting possible or hypothetical benefits." *Flagstaff II*, 762 F.2d at 12. *See In re Mall at One Assocs., L.P.*, 185 B.R. 981, 991 (Bankr. E.D. Pa. 1995) (denying debtor in possession recovery of fees for proposed sale of collateral that never occurred).

*Bankruptcy Code Section 552(b)*

Section 552(b)(1) provides:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1).

Under Section 552(b)(1), a secured creditor with a valid lien in the proceeds of a collateral is entitled to have that interest enforced, "except to any extent that the court, after

notice and a hearing and based on the equities of the case, orders otherwise." 11 U.S.C. § 552(b)(1). "Under this standard, a Bankruptcy Court is required to 'strike the proper balance between the rights of the secured creditor and the rehabilitative goals of the Code.'" *In re Bennett Funding Group, Inc.*, 255 B.R. 616, 634 (N.D.N.Y. 2000) (quoting *In re Island Helicopter Corp.*, 63 B.R. 515, 522 (Bankr. E.D.N.Y. 1986)). "The primary purpose of the equity exception is to prevent a secured creditor from reaping benefits from collateral that has appreciated in value as a result of the trustee's/debtor-in possession's use of other assets of the estate." *In re Bennett Funding Group*, 255 B.R. at 634 (citation and quotation marks omitted) (denying relief under Section 552(b)(1), where the trustee had done nothing to cause the proceeds of chattel papers to appreciate in value).

**<u>The Motion and Cross-Motion for Summary Judgment</u>**

In the Summary Judgment Motion, FSG seeks a determination that it holds a valid secured lien on the Funds, and an award of that amount plus interest, penalties, and attorneys fees. FSG Mem. ¶¶ 1, 18-19. FSG also seeks an accounting by the Trustee with respect to the Funds and the turnover of the Funds to FSG. *Id*. In the Cross-Motion, the Trustee opposes the Summary Judgment Motion and seeks the dismissal of the Complaint for failure to state a claim, and also seeks an award of his reasonable and necessary costs and expenses of preserving or disposing of FSG's property under 11 U.S.C. § 506(c). Trustee Mem. at 1-2.

The parties do not dispute that FSG has a valid secured lien on the Funds and indeed, the Trustee has already turned over $69,035.01 to FSG. Trustee Reply at 2. *See* Docket No. 27 (July 15, 2009, Order). But the parties dispute how the balance of the Funds should be disbursed.

FSG argues that the balance of its claim, for interest, penalties, and attorneys fees, should be paid under Bankruptcy Code Section 506(b). FSG Mem. ¶ 18-19. The Trustee does not dispute that this is the starting point for the analysis. But the Trustee looks to Bankruptcy Code Sections 105(a) and 552(b), including its equity exception, and argues that this Court should use its equitable power to prevent FSG's interest claim from consuming the balance of the Funds. Trustee Mem. at 8-12; Trustee Reply at 3-6. And the Trustee argues that he is entitled to recover reasonable and necessary costs and expenses from the Funds pursuant to Section 506(c), because FSG benefitted from his efforts to recover the Funds in the State Court Action. Trustee Mem. at 12-15; Trustee Reply at 7-10.

*Olympia's Failure To Proceed Under RPAPL Section 1351.3 and the Trustee's Equitable Claims*

RPAPL Section 1351.3 provides that "upon motion of the holder of [a second] mortgage made without valid objection of any other party, the final [foreclosure] judgment may direct payment of the subordinate mortgage debt from the proceeds" of the foreclosure sale. RPAPL § 1351.3. As explained in *Liberty View*, this Section authorizes the payment of surplus funds from a mortgage foreclosure action directly to the holder of a valid second mortgage. *Liberty View*, 150 Misc. 2d at 914-15, 571 N.Y.S.2d at 377-78. This serves the purpose of allowing "the second mortgage [to] be paid without the delay and expense involved in surplus money proceedings." *Liberty View*, 150 Misc. 2d at 915, 571 N.Y.S.2d at 378.

Section 552(b)(1) allows a secured creditor with a valid lien on the proceeds of collateral to have that interest enforced, "except to any extent that the court, after notice and a hearing and *based on the equities of the case*, orders otherwise." 11 U.S.C. § 552(b)(1) (emphasis added). As noted above, this Section requires the court to "strike the proper balance between the rights of

the secured creditor and the rehabilitative goals of the Code." *In re Bennett Funding Group,* 255 B.R. at 634 (citations and quotation marks omitted).

The Trustee argues:

> [T]he failures of Olympia . . . to either appear in the foreclosure action or . . . exercise its rights under RPAPL § 1351.3 must preclude FSG from seeking and obtaining payment of any portion of the Surplus beyond that which Olympia could have recovered between December 1, 2005, when the Referee sold the property and January 24, 2006, when he issued his Report of Sale.

Trustee Mem. at 10. The Trustee seeks to call upon this Court's general equitable powers under Sections 105(a) and 552(b) to reduce FSG's claim and allocate a portion of the Funds to his administrative costs, including attorneys fees. Trustee Mem. at 9, 13; Trustee Reply at 4-5.

FSG responds that Olympia had no legal obligation to proceed under RPAPL Section 1351.3, because the statute, by its plain terms, is permissive, not mandatory, and leaves open to the mortgagee the option of pursuing a surplus money proceeding. FSG Reply ¶ 4. FSG also argues that equity does not favor the Trustee, because he did not make his motion for turnover of the Funds in the State Court Action until July 2, 2007, more than seventeen months after the January 25, 2006, referee's report of sale. FSG Reply ¶ 5. Finally, FSG argues that the Trustee could have filed a motion to confirm the sale in the State Court Action pursuant to RPAPL Section 1361.2 to halt the accrual of interest on FSG's secured claim at any time after April 25, 2006, when he filed his notice of claim to the Funds, but elected not to do so. FSG Mem. at 14-15.

The Trustee replies that the voluntary nature of RPAPL Section 1351.3 does not circumscribe this Court's equitable powers, and that Olympia's failure to make a motion under this Section remains the principal cause of the competing claims to the Funds. Trustee Reply at

3-6.

Section 552(b)(1) allows a secured creditor with a valid lien on the "proceeds, products, offspring, or profits" of collateral to have that interest enforced, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise. 11 U.S.C. § 552(b)(1). The equity exception to the payment of a secured creditor under Section 552 is not often invoked by courts in this Circuit. And neither the Trustee nor this Court's research has uncovered a situation where a court applied the equity exception of Section 552 to the distribution of surplus funds after a foreclosure sale. Instead, courts have applied the exception to situations where the value of the collateral or its proceeds was substantially enhanced through post-petition efforts of a party other than the secured creditor, such as the debtor or the trustee. *See In re Photo Promotion Assocs., Inc.*, 61 B.R. 936, 939-40 (Bankr. S.D.N.Y. 1986) (applying equity exception where creditor had lien on pre-petition cash receivables for photographic work that was substantially performed post-petition).

In *J. Catton Farms, Inc. v. First National Bank of Chicago*, 779 F.2d 1242 (7th Cir. 1985), the Seventh Circuit explained the equity exception as follows:

> Suppose a creditor had a security interest in raw materials worth $1 million, and the debtor invested $100,000 to turn those raw materials into a finished product which he then sold for $1.5 million. The proceeds of this sale (after deducting wages and other administrative expenses) would be added to the secured creditor's collateral unless the court decided that it would be inequitable to do so - as well it might be, since the general creditors were in effect responsible for much or all of the increase in the value of the proceeds over the original collateral.

*J. Catton Farms*, 779 F.2d at 1247. As one court observed, "[t]he primary purpose of the equity exception is to prevent a secured creditor from reaping benefits from collateral that has appreciated in value as a result of the trustee's/debtor-in possession's use of other assets of the

estate." *In re Bennett Funding Group*, 255 B.R. at 634. *See In re Photo Promotion*, 61 B.R. at 939-40. Neither that purpose, nor any other purpose that might logically be associated with this exception, such as not rewarding bad faith or other inequitable conduct, is implicated here. For these reasons, and based on the entire record, the Trustee may not recover under Section 552(b)'s equity exception.

The Trustee also argues that this Court should use its equitable powers under Section 105(a) to find that Olympia's failure to obtain payment on its claim directly from the referee after the foreclosure sale pursuant to RPAPL Section 1351.3 blocks FSG's claim for interest. It is undisputed that, pursuant to Bankruptcy Code Section 506(b), FSG may collect interest on its secured claim for so long as its claim remains fully secured. 11 U.S.C. § 506(b) (allowing interest and any reasonable fees, costs, or charges provided for under the agreement under which the claim arose).

It is undisputed that Olympia had the option to move under RPAPL Section 1351.3 to receive payment directly from the proceeds of the foreclosure sale without further surplus money proceedings. *See* RPAPL § 1352.3; *Liberty View*, 571 N.Y.S.2d at 377-78. But Olympia also had the option *not* to move for that relief, and instead, it elected to receive payment on its junior lien at a later date through a surplus money proceeding. The Trustee does not argue, and the record does not show, that Olympia acted in bad faith or inequitably in electing to receive payment at a later date. In the absence of bad faith or other inequitable conduct, the ordinary operation of Section 506(a) should not be disturbed. For these reasons, and based on the entire record, the Court will not use its equitable powers under Section 105 to alter the payment priorities established by the Bankruptcy Code.

*The Trustee's Section 506(c) Claim*

To recover his expenses under Section 506(c), the Trustee must show that the expenses were necessary, the amounts that he expended were reasonable, and the expenses directly benefitted the secured creditor. *In re McLean Indus.*, 84 B.R. at 350. The Trustee has the burden of proof to show that Section 506(c) applies. *Flagstaff I*, 739 F.2d at 77. Generally, expenses are not "necessary" under Section 506(c) unless there is equity in the collateral that the estate may recover. *In re Crutcher Concrete*, 218 B.R. at 380. And the Trustee must show that the expenses were incurred "primarily for the benefit of the creditor and that the creditor directly [benefitted] from the expenditure." *Flagstaff II*, 762 F.2d at 12. A trustee "does not meet this burden of proof by suggesting possible or hypothetical benefits." *Id*.

Here, when the Trustee made his motion seeking the turnover of the Funds in the State Court Action on July 2, 2007, there was some equity for the estate to recover. Case No. 04-28576, Claim No. 4 (claim as of July 14, 2008, was $86,497.88); Trustee Statement of Material Facts ¶ 16 (total amount of funds as of April 25, 2008, was $92,234.71). This supports the Trustee's argument that the expenses were necessary. *See In re Crutcher Concrete*, 218 B.R. at 380.

Whether the expenses incurred were reasonable requires a more detailed assessment. In order to satisfy this element, the expense incurred should be in some sensible proportion to the value of the benefit to be received. The record does not indicate the amount of equity available for the estate at the time that the Trustee's motion for turnover of the Funds was made. And similarly, while FSG states that "upon information and belief, the fees and commission sought by the Trustee and his counsel in this matter are approximately $30,000," the record does not

show the amount of the Trustee's Section 506(c) claim against the Funds. FSG Mem. at 22. This record falls short of demonstrating that the entire amount sought by the Trustee is reasonable, but does not rule out that some lesser amount may be reasonable under the circumstances.

Finally, the expenses must provide a direct benefit to the secured creditor. The Trustee argues that the expenses benefitted FSG because he protected FSG's rights against a competing creditor, Wilfly, and because his application in the State Court Action permitted FSG to avoid incurring the costs associated with a surplus money proceeding. Trustee Reply at 7-8. FSG responds that its rights were already fully protected against Wilfly because Wilfly's unsecured interest in the Funds is junior to FSG's secured claim. FSG Reply ¶¶ 8-9. FSG also argues that the attorneys fees associated with a surplus money proceeding in Kings County are approximately $1,200. O'Connor Decl. ¶ 4; Krigsman Decl. ¶ 7. The Trustee replies that FSG's estimate does not take into account the additional complexity attributable to a bankruptcy case. Trustee Supp. Mem. 1-5; Kramer Reply Decl. ¶¶ 1-8.

Here, the Debtor assigned his contingent unsecured interest in the Funds to Wilfly, who later filed a notice of claim in the State Court Proceeding. O'Connell Decl. ¶¶ 25-26. It is undisputed that Wilfly's unsecured interest is junior to FSG's secured interest in the Funds. The Trustee has not shown that Wilfly's junior position placed FSG's interest in the Funds in jeopardy in any way. In a surplus money proceeding, FSG's claim would have been satisfied prior to Wilfly's. RPAPL § 1355.2. As a result, FSG did not receive a direct benefit from the Trustee's actions in respect of Wilfly's claim to the Funds.

But the situation is different with respect to the costs associated with a surplus money

proceeding. The record shows that but for the Trustee's application in the State Court Action, FSG would likely have incurred the costs of pursuing a surplus money proceeding. FSG estimates these costs at some $1,700, comprised of $1,200 in attorneys fees and $500 in referee fees. *See* O'Connor Decl. ¶ 4; Krigsman Decl. ¶ 7; Dee Decl. ¶ 7. That is, the Trustee's actions provided a direct benefit to FSG, which may be measured by the costs that it avoided.

For these reasons, and based on the entire record, the Trustee may recover $1,700 of his expenses associated with the turnover of the Funds in the State Court Action under Bankruptcy Code Section 506(c) because these expenses were necessary, reasonable, and directly benefitted FSG.

**Conclusion**

For the reasons stated herein, FSG's Summary Judgment Motion is granted in part to the extent that FSG may recover its secured claim and interest, penalties, and attorneys fees from the Funds. The Trustee's Cross-Motion is granted in part to the extent that he may recover $1,700 from the Funds, representing the amount of his expenses that were necessary, reasonable, and directly benefitted FSG.

An order and judgment in accordance with this Memorandum Decision shall be entered simultaneously herewith.

Dated: Brooklyn, New York
September ***1***, 2009

***s/Elizabeth S. Stong***
ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE